O

JS-6

UNITED STATES DISTRICT COURT

DISTRICT OF CALIFORNIA

WESTERN DIVISION

WILLIAM SMOLEK,

Petitioner

vs.

ALKA SAGAR; ET AL.,

Respondents.

Case No.: CV 07-4878 CAS (PLAx)

ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I. INTRODUCTION

On July 30, 2007, William Smolek ("Smolek") filed a complaint against the following defendants: (1) Alka Sagar, Beong-Soo Kim, and George Cardona (collectively, "the federal defendants"); (2) Ameriprise Financial (erroneously sued as "Amerprise Financial"), James Cracchiolo ("Cracchiolo"), John C. Junek; Jean Kodadek; and Neysa Alecu (erroneously sued as "Neyso Aleou"); Hemann, Morse and Associates ("Hemann Morse"); and Carolyn Hemann (collectively, "Ameriprise defendants"); and (3) unknown named defendants one through ten. The complaint alleged that the defendants unlawfully conspired to freeze and did freeze funds in a brokerage account in Smolek's name, thereby injuring him. On November 19, 2007, the Court granted defendants' motions to dismiss with leave to amend.

/ / /

Smolek filed a first amended complaint ("FAC") on December 3, 2007, against the same defendants. Smolek filed a RICO case statement on December 19, 2007. The FAC alleges that in or about the summer of 2006, Smolek requested that Stephen Yagman ("Yagman"), his nephew and former attorney in this action, transfer approximately $300,000 into a new account in Smolek's name. FAC ¶ 19. The FAC alleges that Smolek gave Yagman power of attorney over these funds. Id. The FAC alleges that Yagman transferred said funds into a brokerage account maintained by Ameriprise Financial and Hemann Morse, No. 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, on behalf of Smolek. Id. at ¶ 20. The FAC further alleges that the federal defendants, who are Assistant United States Attorneys, conspired with the Ameriprise defendants to freeze the funds in Smolek's brokerage account and did freeze said funds. FAC ¶¶ 4, 21, 22.

The FAC alleges that the freezing of his funds caused him economic harm because while his funds were frozen, Smolek was prevented from investing in the stock market and thereby prevented from earning a profit. Id. ¶¶ 26-28. The FAC alleges claims against all defendants for violation of his federal civil rights, under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and violations of the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(b), (c), and (d).

On December 19, 2007, by stipulation of the parties, Cracchiolo was dismissed from the action with prejudice. On March 4, 2008, Smolek dismissed the Ameriprise defendants with prejudice.

On December 27, 2007, the federal defendants filed the instant motion to dismiss. Smolek filed an opposition thereto on January 28, 2008, and the matter was taken under submission. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

/ / /

/ / /

## II. BACKGROUND

Yagman was the subject of criminal charges for tax evasion, bankruptcy fraud, and money laundering set forth in a first superseding indictment filed on June 1, 2006. Federal Defendants' Request for Judicial Notice ("RJN"), Ex. 2.[1] On June 22, 2007, a jury found Yagman guilty on all counts. United States v. Yagman, CR-06-227 SVW (Docket 425).[2]

According to the FAC, on two occasions -- on or about July 13, 2007 and July 18, 2007 -- the federal defendants, who were the prosecutors in Yagman's criminal case, conspired with the Ameriprise defendants to freeze the funds in Smolek's brokerage account and did freeze said funds. FAC ¶¶ 21, 22.

On July 20, 2007, the federal defendants filed an *ex parte* application for pre-judgment non-dissipation order that involved Smolek's Ameriprise Financial brokerage account. Id. (Docket 444). According to this application, the federal defendants had learned that Yagman had requested that Ameriprise Financial liquidate accounts in his

[1] The Court granted the federal defendants' request to judicially notice a number of publicly filed documents in its November 19, 2007 Order. See Order at 2 n.1. Smolek, for the first time, objects to the federal defendants' request for judicial notice, arguing that he "did not have a fair opportunity to object to [defendants requests for judicial notice] because plaintiff did not make any substantive opposition to the motion." Pl.'s Objection to Request for Judicial Notice at 2 n.1. This objection is untimely. Moreover, the Court relies herein solely on court-filed documents which are properly the subject of judicial notice. Hensley v. United States Dist. Court E. Dist. of Cal., 2008 U.S. Dist. LEXIS 11965, at *6 (E.D. Cal. 2008) ("A court may take judicial notice of its own files and of documents filed in other courts."); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (Matters properly the subject of judicial notice may be considered when deciding a motion to dismiss under Rule 12(b)(6)); see Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

[2] On August 17, 2007, the court granted Yagman's motion for acquittal with respect to counts nine, ten, eleven, thirteen, fourteen, and eighteen. United States v. Yagman, CR-06-227 SVW (Docket 474).

control, including Smolek's account. Id. at 3-4. The application argued that a non-dissipation order was necessary to ensure that there were funds available to pay restitution to the victims of Yagman's criminal conduct. Id. at 6. In his opposition to the federal defendants *ex parte* application, Yagman asserted that he had attempted to liquidate his 401k account with Ameriprise Financial on July 13, 2007, in order to assist with the payment of legal fees. Id. at 2 (Docket 453). The court denied the federal defendants' *ex parte* application on July 24, 2007. Id. (Docket 455). The FAC alleges that Smolek's funds were frozen until at least July 26, 2007. Id. ¶ 29.

Smolek filed the instant action on July 30, 2007. Yagman was sentenced on November 27, 2007. Id. (Docket 540).

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

The federal defendants argue that the FAC must be dismissed because they are entitled to absolute prosecutorial immunity. Alternatively, they argue that they are entitled to qualified immunity.

### A. Absolute Immunity

"Immunity extends to protect a prosecutor who acts within his or her authority and in a quasi-judicial capacity." Ashelman v. Pope, 793 F.2d 1072, 1076 (9th Cir. 1986). "The focus is on the nature or function of the prosecutor's activity." Id.; Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). "The primary policy of extending immunity to judges and to prosecutors is to ensure independent and disinterested judicial and prosecutorial decisionmaking." Ashelman, 793 F.2d at 1078; Butz v. Economou, 438 U.S. 478, 512 (because "the loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus . . . [a]bsolute immunity is . . . necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation."); Imbler v. Pachtman, 424 U.S. 409, 425 (1976) ("a defendant will often transform his resentment at being prosecuted into the ascription of improper and malicious actions to the state's advocate."). Moreover, "the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." Butz, 438 U.S. at 512. "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Buckley, 509 U.S. at 269 (quoting Burns v. Reed, 500 U.S. 478, 486 (1991)). However, the scope of immunity is broadly construed. Ashelman, 793 F.2d at 1078. The doctrine is a complete defense against both Bivens claims and claims under RICO. See Chappell v. Robbins, 73 F.3d 918, 922 (9th Cir. 1996) (upholding absolute legislative immunity in the context of a RICO claim); Ashelman v. Pope, 793 F.2d 1072, 1077-78 (9th Cir. (1986) ("There appears to be no other authority for making the underlying conspiracy the determinative act in deciding whether immunity should be available."); Cano v. Navicky, 1993 U.S. Dist. LEXIS 2953, at *5 (N.D. Cal. 1993) (dismissing Bivens claim where the defendants were entitled to absolute prosecutorial immunity); Connor v. Philadelphia, 1991 U.S. Dist. LEXIS 8058, at *14 (D. Pa. 1991) ("in enacting RICO, Congress did not intend to limit a prosecutors immunity from civil suit. Thus, the

federal standard of prosecutorial immunity may apply to bar a civil RICO claim against a prosecutor.").

The federal defendants argue that they were acting in their prosecutorial capacity when they sought to freeze Smolek's brokerage account. They argue that after Yagman was found guilty of tax evasion, bankruptcy fraud, and money laundering, they had a duty to ensure the preservation of assets that could be used to pay restitution to Yagman's creditors. They contend that because Yagman had power of attorney over Smolek's brokerage account, they believed that these funds were in danger of being depleted by Yagman for his own benefit. The federal defendants argue that because they were acting as prosecutors when they sought to freeze Smolek's account, they are entitled to absolute prosecutorial immunity.

Smolek argues that, given the allegations in the FAC, which must be taken as true for the purposes of this motion to dismiss, the federal defendants are not entitled to immunity. Smolek points to the following allegations:

> [The federal defendants] were not acting as prosecutors. FAC ¶ 6.
>
> [The federal defendants] were acting as investigators and/or in administrative capacities. Id. at ¶ 7.
>
> [The federal defendants] were acting in non-adversarial capacities. Id. at ¶ 8.
>
> [The federal defendants] did not take any action directly related to the judicial process. Id. at ¶ 9.
>
> [The federal defendants] alleged improper actions and improprieties did not have operate on them the judicial process [sic] as an adequate check. Id. at ¶ 10.
>
> [The federal defendants] engaged in conduct that was not part of any judicial process. Id. at ¶ 11.

> [The federal defendants'] alleged actions had not nexus to any judicial process. Id. at ¶ 12.

However, when considering a motion to dismiss for failure to state a claim, "[t]he court need not accept as true conclusionary allegations or legal characterizations." Judge William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 9:221 (The Rutter Group 2007); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (noting that when considering a Rule 12(b)(6) motion, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). The foregoing allegations are mere legal conclusions, rather than allegations of fact. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Therefore, these allegations do not suffice to defeat the federal defendants' assertion of prosecutorial immunity.

Smolek further argues that the federal defendants froze the funds in his brokerage account without court authorization. Thus, Smolek contends, their actions were essentially investigatory and conducted outside of any judicial process, such that they are not protected by the doctrine of absolute prosecutorial immunity.

"A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (U.S. 1993); Botello v. Gammick, 413 F.3d 971, 975-76 (9th Cir. 2005). As the Supreme Court has explained,

> [t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching

> for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.

Buckley, 509 U.S. at 273. While the Supreme Court has not drawn a bright line between acts that are entitled to absolute immunity and those that are not, the guiding inquiry is "whether a prosecutor's investigation is of the type normally done by police, in which case prosecutors enjoy only qualified immunity, or whether an investigation is bound up with the judicial process, thus affording prosecutors the heightened protection of absolute immunity." Genzler v. Longanbach, 410 F.3d 630, 638 (9th Cir. 2005).

In this case, when the federal defendants sought to freeze Smolek's bank account, they were not preparing for trial, for Yagman had already been convicted. Rather, based on the federal defendants' *ex parte* application for a non-dissipation order, it appears that the federal defendants were attempting to preserve assets in Yagman's control in order to ensure that monies would be available, upon Yagman's sentencing, to be paid as restitution. No factual allegations in the FAC suggest otherwise. Such conduct, although investigatory in a sense, is hardly a function that is normally performed by a detective or police officer. While the federal defendants' actions in seeking to preserve assets in Yagman's control is not the type of activity that most commonly gives rise to absolute immunity, these actions are no less deserving of protection.

A similar issue was presented in Ehrlich v. Giuliani, 910 F.2d 1220 (4th Cir. 1990). There, federal prosecutors pursuing an underlying criminal RICO action obtained a court order to freeze investment accounts held by indicted defendants. Their intent was to preserve the assets in these accounts in connection with future RICO

forfeiture proceedings. When it turned out that the federal prosecutors had frozen the plaintiff's account in error -- they had intended to freeze the account of a different individual with a similar name -- the plaintiff filed suit, alleging Bivens claims against them. The district court granted the federal prosecutors' motion to dismiss on absolute prosecutorial immunity grounds, and the court affirmed, rejecting the plaintiff's contention that the prosecutors' conduct was merely investigatory. Id. at 1222-23. The court reasoned that because an important prosecutorial function is to ensure that defendants and their assets are present for trial, the federal prosecutors' actions in investigating and preserving the assets of the defendants in the RICO action were among the advocacy duties of a prosecutor that entitled them to absolute immunity. Id. The court further noted,

> Considering the potential burden on prosecutors, we find that imposing the threat of personal liability in the context of a prosecution under the RICO statute would unduly hinder the prosecutor's performance. Proceedings under the RICO statute often involve sophisticated defendants in complex cases. Potential defendants fearing forfeiture proceedings may try to hide their assets, forcing the prosecutor to cast a broad net in the search for information about those assets. While care should be taken before requesting a restraining order, the potential for a mistake could deter a prosecutor from exercising independent judgment if not shielded from liability. Courts issuing restraining orders should review the application to minimize the risk of error, but if a mistake is

> made and the wrong asset is frozen, the prosecutor should not have to face personal liability.

Id.

In this case, the federal defendants' attempts to preserve assets that they believed were in Yagman's control for the purposes of ensuring Yagman's ability to pay restitution are similar to the Ehrlich defendants' efforts to secure the availability of assets for the purposes of a forfeiture proceeding. While the Ehrlich defendants' actions occurred prior to trial, and the federal defendants' sought to freeze Smolek's account post-trial, this is a distinction without a difference. The doctrine of absolute prosecutorial immunity may extend to a prosecutor's actions on a case in both the pre-trial and post-trial phases. Demery v. Kupperman, 735 F.2d 1139, 1144-45 (9th Cir. 1984); Cousins v. Lockyer, 2007 U.S. Dist. LEXIS 83981, at *7-*8 (N.D. Cal. 2007) (noting that prosecutorial immunity "shields certain post-conviction choices by a prosecutor from civil liability if these choices relate to his or her duties as a criminal prosecutor."); Olson v. Oreck, 2008 U.S. Dist. LEXIS 2786, at *33 (E.D. Cal. 2008) ("prosecutorial immunity applies even to actions after conclusion of a case as long as they are part of the defendant's function as an advocate for the state."). Here, the federal defendants sought to freeze Smolek's account after Yagman's trial had concluded, but prior to his sentencing, at which time questions regarding Yagman's obligation to make restitution would be resolved.[3] Thus, when the federal defendants engaged in the conduct that has given rise to this suit, the judicial process and their participation therein had not been concluded.[4] Compare Spurlock v. Thompson, 330

---

[3] It is of no consequence that Yagman was not ultimately required to pay restitution. The federal defendants were entitled to take action to preserve Yagman's assets in the case that such restitution was ordered by the court.

[4] Smolek attempts to distinguish Ehrlich on the ground that in that case the (continued...)

F.3d 791, 801 (6th Cir. 2003) (denying immunity for alleged retaliatory conduct not directly associated with the plaintiff's trial, when such conduct occurred postconviction and in the absence of any ongoing adversarial proceedings).

The policy concerns that guided the Ehrlich court also support a finding of absolute immunity in this case. The underlying criminal action against Yagman in this case, while not involving RICO claims, was similar to the underlying criminal action in Ehrlich insofar as it involved allegations that Yagman had employed complex schemes in an attempt to conceal his assets from the bankruptcy court and from the IRS. As Ehrlich counsels, such cases may require prosecutors to search far and wide for assets which defendants may have hidden. Imposing civil liability on prosecutors for their missteps in connection with their efforts to identify and secure such assets would, in some cases, threaten their ability to make independent and disinterested decisions in carrying out their duties.[5]

---

[4](...continued)
defendants inadvertently caused harm to the plaintiff, whereas in this case, it is alleged that the federal defendants intended to harm Smolek. This argument is unavailing because in determining whether prosecutors are entitled to absolute immunity, their intent is immaterial. Ashelman v. Pope, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc) ("Intent should play no role in the immunity analysis."); McCarthy v. Mayo, 827 F.2d 1310, 1315 (9th Cir. 1987) ("The intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry."); accord Milstein v. Cooley, 257 F.3d 1004, 1008 (9th Cir. 2001).

[5] Smolek also relies on Beltran v. Santa Clara County, 514 F.3d 906 (9th Cir. 2008), in which the court ruled that social workers were "not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute." Id. at 908. The court further stated, "[a] prosecutor doesn't have absolute immunity if he fabricates evidence during a preliminary investigation, before he could properly claim to be acting as an advocate." Id. Beltran is inapposite because the federal defendants' conduct (continued...)

Smolek's unsupported contention that the federal defendants are not entitled to invoke absolute immunity because they acted without court approval lacks merit. Absolute prosecutorial immunity does not exist merely for those actions undertaken with the approval of the court. On the contrary, the purpose of extending such broad protections to prosecutors is to enable them to fully and independently exercise their discretion in carrying out their quasi-judicial duties. Whether or not the federal defendants' conduct was sanctioned by the court in the underlying criminal case is of no consequence to the absolute immunity analysis. Instead, the operative question is whether the conduct was an integral part of a judicial process. See Wang v. County of Santa Clara, 2007 U.S. Dist. LEXIS 21873, at *5 (N.D. Cal. 2007) (citing Sykes v. California, 497 F.2d 197, 200 (9th Cir. 1974)). As discussed *supra*, the Court finds and concludes that the actions of the federal defendants in attempting to ensure that assets would be available should Yagman be required to make restitutionary payments was intertwined with the judicial process, and therefore, this conduct is encompassed by the doctrine of absolute prosecutorial immunity.[6]

---

[5](...continued) occurred after the commencement of criminal proceedings against Yagman. Unlike in Beltran, as the Court has discussed *supra*, the federal prosecutors were acting as advocates when they sought to freeze Smolek's account.

[6] Smolek does not cite to Colello v. SEC, 1996 U.S. Dist. LEXIS 17711 (C.D. Cal. 1996), but this case is distinguishable in any event. In Colello, the defendants, various United States and Swiss government agencies and officials, froze the plaintiffs' bank accounts in connection with an underlying SEC enforcement action against the plaintiffs. The plaintiffs sued, alleging Bivens claims. The court declined to extend absolute immunity to the individual defendants' participation in the freezing of the plaintiffs' accounts. The court distinguished Ehrlich and Schrob v. Catterson, 948 F.2d 1402 (3d Cir. 1991), on the ground that these cases involved forfeiture proceedings against property, while the case before it involved the defendants' efforts to freeze the plaintiffs' bank accounts. Although the defendants contended that their efforts to freeze the plaintiffs' bank (continued...)

Finally, it is irrelevant that Smolek was not himself a defendant in the underlying criminal case. It is apparent from the court filings in the underlying criminal action that the federal defendants' conduct was directed at Yagman, rather than Smolek. Yagman's undisputed control of Smolek's account provided the necessary nexus to the underlying criminal action to make the federal defendants' efforts in freezing this account part of an ongoing judicial proceeding. While Smolek, apparently an innocent individual, may have been injured as a consequence of their actions, this does not affect the question of absolute prosecutorial immunity. See Ehrlich, 910 F.2d at 1224 ("absolute immunity applies if the action at issue was taken in furtherance of

---

[6](...continued) accounts were part and parcel of the underlying SEC enforcement action, the court found that the defendants' "conclusory declarations on this subject [did] not resolve the issue." Id. at *37. Additionally, the court noted that because the freeze was not explicitly connected to any judicial proceedings directed against one of the plaintiffs, this plaintiff had no access to any adversarial process to contest the validity of the freeze. Id.

This case does not involve a forfeiture proceeding. However, as discussed *supra*, the federal defendants' actions in seeking to preserve Yagman's assets for the purpose of future restitutionary payments is akin to the actions of the defendants in Ehrlich in attempting to ensure that assets would be available for forfeiture proceedings. Moreover, in this case, the connection between the federal defendants' efforts to freeze Smolek's brokerage account and the underlying criminal case is supported by more than mere conclusory statements on the part of the defendants, which distinguishes this case from Colello. Here, the contents of the federal defendants' *ex parte* application for a non-dissipation order establish a nexus between their acts and the underlying criminal action -- a nexus that is contradicted in the FAC only by the most conclusory factual allegations. This nexus gives rise to absolute immunity. Additionally, while in Colello the court found it significant that one of the plaintiffs whose account had been frozen lacked the ability to contest the validity of the freeze, such is not the case here. Yagman, who had power of attorney over Smolek's account, had the ability to challenge the freeze of this account, and, in fact, this is exactly what he did. See United States v. Yagman, CR-06-227 SVW (Docket 453) (Yagman's Opposition to the *Ex Parte* Application for a Non-Dissipation Order at 8-9).

prosecutorial duties even though the prosecutors inadvertently injured an innocent person").

**B. Qualified Immunity**

To the extent that there is any question as to the propriety of the federal defendants' actions in seeking to freeze Smolek's account, the federal defendants are also entitled to protection under the doctrine of qualified immunity.[7]

This doctrine provides that "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993) (quotation omitted). Qualified immunity affords "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is

[7] Smolek argues that qualified immunity is not a valid defense to RICO claims because this doctrine only protects against those remedies that were available at common law. Although Smolek argues that no Ninth Circuit opinion has expressly applied qualified immunity in the context of RICO claims, he fails to cite to any case holding that a government official is *not* entitled to invoke this doctrine as a defense to a RICO claim. While there appears to be no Ninth Circuit decision on point, this Circuit has permitted a defendant to invoke qualified immunity as a defense to § 504 of the Rehabilitation Act of 1973, 42 USCS § 504, which was enacted after RICO. Doe v. Attorney Gen. of United States, 941 F.2d 780, 799 (9th Cir. 1991). Moreover, those cases that have confronted the question of whether a defendant may invoke the doctrine of qualified immunity as a defense to RICO claims have answered in the affirmative. See Willis v. Mullins, 2006 U.S. Dist. LEXIS 73812, at *12-*13 (E.D. Cal. 2006) ("Qualified immunity may be asserted in response to a RICO claim."); Cullinan v. Abramson, 128 F.3d 301, 307-12 (6th Cir. 1997) (qualified immunity was a valid defense against RICO claims); Brown v. NationsBank Corp., 188 F.3d 579, 587-88 (5th Cir. 1999) (same); Trugreen Landcare, L.L.C v. Scott, 512 F. Supp. 2d 613, 622 (N.D. Tex. 2007); see also Gonzalez v. Lee County Hous. Auth., 161 F.3d 1290, 1300 (11th Cir. 1998) (noting "this court and others have held that public officials are entitled to assert the defense of qualified immunity when sued under a federal statute other than section 1983," and listing cases). The weight of authority indicates that qualified immunity is a valid defense against RICO claims.

erroneously permitted to go to trial." Saucier v. Katz, 533 U.S. 194, 200-01 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Consequently, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. at 201 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

The Court has set forth a two pronged approach to determining whether an official may invoke the doctrine. First, a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. Next, a court must inquire as to whether the right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . ." Id. That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 643 (1987)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.; see also F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1315 (9th Cir. 1989) ("The relevant inquiry is whether a reasonable official could have believed his conduct was lawful in light of clearly established law and the facts of the case."). Until it is determined that qualified immunity does not apply, discovery should not proceed. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Smolek contends that the federal defendants violated his Fifth Amendment rights when they deprived him of the use of the funds in his brokerage account without due process. Smolek further argues that it should have been clear that the federal defendants' conduct would have violated his constitutional rights because the federal defendants knew that they were acting without any legal authority to freeze his account. Smolek highlights the federal defendants' failure to obtain court approval of the freeze.

Viewed in the most favorable light to Smolek's position, the federal defendants' conduct deprived Smolek of his property in violation of his constitutional rights. However, it cannot be said that a reasonable officer in the situation confronted by the federal defendants would have clearly realized that freezing his account was unlawful. As discussed *supra*, the federal defendants were attempting to prevent Yagman from dissipating his assets in order to ensure that restitution payments would be possible. Even if Smolek showed that there was no danger that Yagman would have dissipated Smolek's funds, no factual allegations in the FAC indicate that the federal defendants were aware that this was not a real possibility.

Instead, the FAC alleges, in essence, that the manner in which the federal defendants sought to freeze Smolek's account was improper because they acted without first seeking the court's approval. However, it does not appear that, under the circumstances, a reasonable official would have clearly realized that seeking to freeze Smolek's account prior to obtaining a court order violated Smolek's rights. Taking the allegations in the FAC to be true, the federal defendants sought to freeze Smolek's account a week before they filed their *ex parte* application for a non-dissipation order. In their *ex parte* application, the federal defendants contended that a freeze order was necessary because there was an imminent threat that Yagman would dissipate funds in his control. While it may have been imprudent for the federal defendants to have sought the freeze of Smolek's account prior to the court's order approving the freeze -- which, in this case, was never issued -- it was not clear that their taking such preemptive steps to ensure that the funds were not depleted before such an order could issue was unlawful. Moreover, Smolek has pointed to no authority to indicate that the federal defendants' conduct in seeking to freeze his account prior to obtaining a court order, constituted a deprivation of his property without due process of law in violation of his Fifth Amendment rights. Thus, reasonable officials, standing in the shoes of the federal defendants, would not have clearly recognized that seeking to freeze Smolek's

account prior to obtaining a court order violated any of Smolek's statutory or constitutional rights. Therefore, the federal defendants are entitled to qualified immunity.[8]

Accordingly, the Court GRANTS the federal defendants' motion to dismiss the FAC. The Court finds and concludes that the defects discussed herein cannot be cured by amended pleading. The gravamen of Smolek's complaint arises from conduct engaged in by the federal defendants that is entitled to immunity. Because leave to amend would be futile, the FAC is dismissed with prejudice.

## V. CONCLUSION

---

[8] Smolek further contends that the federal defendants are not entitled to qualified immunity because they were not engaged in a discretionary function. See F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1314 (1989) ("Qualified immunity shields only actions taken pursuant to discretionary functions."). Smolek contends that the federal defendants' conduct was ministerial in nature -- rather than discretionary -- because they acted outside the scope of their authority when they sought to freeze Smolek's account.

Whether or not an official's conduct is discretionary for the purposes of determining whether the doctrine of qualified immunity applies does not turn upon whether or not that action is within the scope of his or her duties. Instead, this question turns upon the extent to which that action requires the official to exercise judgment. See id. (citing Gagne v. City of Galveston, 805 F.2d 558, 560 (5th Cir. 1986) ("If an official is required to exercise his judgment, even if rarely or to a small degree, the Court would apparently not find the official's duty to be ministerial in nature.")). Here, because the federal defendants' efforts to freeze Smolek's account required them to exercise their judgment, this conduct was discretionary. Therefore, Smolek's argument lacks merit.

In accordance with the foregoing, the Court GRANTS the federal defendants' motion with prejudice.

IT IS SO ORDERED.

Dated: April 7, 2008

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE